**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF VIRGINIA**
Richmond Division

**In re: Meridien Energy, LLC,**          Case No. 23-31377-KLP
        **Debtor.**                                  Chapter 11

### MEMORANDUM OPINION AND ORDER

Before the Court is the objection (the "Objection") filed by Meridien Energy, LLC (the "Debtor") to the claim filed by MarkWest Liberty Midstream and Resources, L.L.C. ("MarkWest") in this Chapter 11 case. A hearing on the Objection was held on March 13, 2024, at which time the Court took the matter under advisement.

The Debtor initiated this Chapter 11 case by filing a voluntary petition on April 20, 2023. The Debtor is a Virginia limited liability company operating a full-service pipeline construction business headquartered in Randolph, New York, and has engaged in extensive gas pipeline construction projects, primarily in the eastern United States. The Debtor has continued to operate its business and manage its affairs as a debtor in possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.[1]

The Debtor employs approximately sixteen individuals on a full-time basis, with twelve employees being paid on an hourly basis and four employees receiving a salary. [Declaration of John W. Teitz in Support of the Debtor's Voluntary Petition and First Day Motions or "Teitz Dec.," ECF No. 7, at 1]. The Chief Executive Officer and sole member of the Debtor is William C. Schettine ("WCS") [ECF No. 104, at

---

[1] All references to the Bankruptcy Code are to 11 U.S.C. §§ 101-1532.

1

10]. The four salaried employees are WCS and three members of his family, who are listed as insiders and officers of the Debtor. [Statement of Financial Affairs at 10-11, ECF No. 104]. On April 27, 2023, the Court entered an order designating John W. Teitz ("Teitz") to perform the duties imposed upon the debtor by the Bankruptcy Code. [ECF No. 35]. Teitz, a managing director of Compass Advisory Partners, LLC, was retained as the Chief Restructuring Officer of the Debtor for the purpose of managing the Debtor's day-to-day operations while assisting in the Debtor's restructuring efforts. [Teitz Dec. at 1].

The Debtor's bankruptcy filing followed a lengthy and heavily litigated dispute with MarkWest. On November 16, 2018, MarkWest commenced a lawsuit against the Debtor in the District Court for the City and County of Denver, Colorado (the "Colorado Litigation") in connection with a project to construct a natural gas pipeline in West Virginia (the "Project"). [Teitz Dec. at 5]. MarkWest had contracted with the Debtor to construct certain segments of the Project and asserted that the Debtor had breached its obligations under the contract. In response, the Debtor asserted various counterclaims against MarkWest. A trial took place in the Colorado District Court in October 2021, resulting in a net judgment in favor of MarkWest in the amount of $13,283,384.64 (the "Judgment"). Both parties appealed elements of the Judgment and the award of damages to the other party (the "Colorado Appeals"), which appeals remain pending in the Colorado Court of Appeals (the " Appeals Court"). [Teitz Dec. at 6].

The Debtor cited the costs and burdens associated with termination of the Project and the resulting litigation, along with additional financial setbacks stemming from the COVID-19 pandemic, as the reasons for its Chapter 11 filing. *Id*. At the time of its filing, the Debtor listed approximately $19.5 million in total debt obligations. Its schedules reveal that approximately $5.2 million of that debt is secured by substantially all the Debtor's assets, with Bank7 Corporation ("Bank7") holding approximately $4 million of the secured indebtedness. [Teitz Dec. at 7, ECF No. 103, Sch. D].[2]

On May 4, 2023, the Office of the United States Trustee filed a statement indicating that no unsecured creditors committee had been formed in the case. [ECF No. 46]. Although its claim is disputed by the Debtor, MarkWest is, by far, the Debtor's largest unsecured creditor.

Immediately after its bankruptcy filing, the Debtor filed a motion (the "DIP Financing Motion") seeking approval of interim postpetition financing (also referred to as the "DIP Financing") from ICT-DIP, LLC (the "DIP Lender") in the amount of $1.6 million, for the purpose of "preserving and maximizing" the value of its estate. [ECF No. 6]. On May 16, 2023, MarkWest filed an objection to the Debtor's request for final approval of the DIP Financing. [ECF No. 60]. MarkWest complemented its objection on June 1, 2023, by filing its "Rule 60 Motion for Relief from the Interim

---

[2] The Debtor is also indebted to WCS in the approximate amount of $1,160,000 under a line of credit dated March 30, 2023. The WCS indebtedness is secured by a second priority lien behind Bank 7 in substantially all the Debtor's assets. [Teitz Dec. at 8]. At the time of its filing, the Debtor had unsecured debts totaling approximately $14.3 million, inclusive of the disputed MarkWest claim. [Teitz Dec. at 9].

Order approving the DIP Financing." [ECF No. 88]. On the same date, MarkWest filed a motion seeking derivative standing to investigate and pursue potential avoidance actions against the Debtor's prepetition secured lenders "to avoid Bank7's and Mr. Schettine's unperfected liens pursuant to section 545 of the Bankruptcy Code . . . ." [ECF No. 89 at 2]. On June 7, MarkWest filed a motion for the appointment of a Chapter 11 trustee. [ECF No. 121].

On June 7, 2023, the Court held a lengthy evidentiary hearing on the Debtor's request for final approval of the DIP Financing Motion. At the conclusion of the hearing, the Court overruled the objection of MarkWest and granted final approval of the DIP Financing Motion. On June 8, the Court entered a final order authorizing the Debtor to obtain postpetition financing. [ECF No.132]. Neither of the orders approving the DIP Financing was appealed, and the time to file an interim appeal has expired.[3] On July 26, 2023, MarkWest withdrew its motion for derivative standing. [ECF No. 200]. On August 18, MarkWest withdrew its motion to appoint a chapter 11 trustee. [ECF No. 229].

On June 5, 2023, the Debtor filed its schedules. In schedules E/F, it listed a debt to MarkWest in the amount of $13,283,384.64, the Judgment amount, and listed that debt as disputed and contingent. On August 21, 2023, MarkWest timely filed proof of claim 9-1 (the "MarkWest Claim" or "the Claim") in the Debtor's case. The Claim is in the amount of $13,283,384.64, the Judgment amount.

---

[3] MarkWest's "Rule 60 Motion for Relief from the Interim Order approving the DIP Financing," [ECF No. 88], was rendered moot as a result of the Court's final approval of the DIP Financing.

4

On November 15, 2023, the Court entered the order (the "Confirmation Order") confirming the Debtor's amended chapter 11 plan (the "Plan"). [ECF No. 368]. The Plan became effective on November 30, 2023. On November 29, 2023, MarkWest filed an appeal of the Confirmation Order. [ECF No. 376]. MarkWest did not seek a stay of the Confirmation Order and did not make any other request that would have delayed the implementation of the Plan.

Under the Plan, $200,000 is to be distributed pro rata to holders of allowed general unsecured claims. [ECF 300, Art. IV(B)].[4] That distribution has been partially accomplished, but a portion of the $200,000 is being reserved until the Debtor's objections to the claims of MarkWest and another creditor have been resolved. The Confirmation Order contains the following provision addressing the claim of MarkWest:

> For avoidance of doubt, the Appeal and any and all Causes of Action and related Claims against MarkWest are expressly preserved and the ultimate allowance of any Claim of MarkWest shall be subject to the treatment of such Claim pursuant to the Plan."

ECF No. 376, ¶ 12. The Confirmation Order further provides that:

---

[4] The Plan provides that "The Initial New Value Contribution shall fund the initial distributions under the Plan. The Initial New Value Contribution shall be allocated as follows: (i) $200,000.00 shall be distributed to pay the Holders of Allowed General Unsecured Claims (the '**First Distribution**'); (ii) $75,000.00 shall be allocated to the Litigation Trust (the '**Litigation Trust Funding**') to fund prosecution of the Appeal and the Avoidance Actions, and (iii) $825,000.00 shall be allocated to fund the operations of the Reorganized Debtor (the '**Operational Funding**') for the Post-Confirmation Operational Period. In the event there are any amounts of the Litigation Trust Funding remaining following prosecution or settlement of the Appeal and any Avoidance Actions, the Litigation Trustee shall return such remaining amounts to the Estate, and the Reorganized Debtor shall distribute such funds to the Holders of Allowed Claims in accordance with the priority provisions of the Bankruptcy Code. In the event the Litigation Trust Funding is insufficient to fund the administration of the Litigation Trust, the Plan Sponsor shall contribute funds in the amount of up to an additional $100,000.00 to fund the Litigation Trust (the '**Supplemental Trust Funding**')." [ECF No. 300, Art. IV(B), emphasis in original].

5

> Notwithstanding the foregoing, or any other provision of the Plan or Confirmation Order, the Debtor's and MarkWest's respective setoff rights with respect to the Appeal, MarkWest's cross appeal, and any subsequent and related litigation are and shall be preserved and MarkWest and the Debtor each reserve any and all rights related to the Appeal, MarkWest's cross appeal, and any subsequent and related litigation; provided, however, that MarkWest's Claim against the Debtor, regardless of the ultimate adjudication of the Appeal, MarkWest's cross appeal, and any subsequent and related litigation, shall be subject to the Plan or Confirmation Order.

*Id.* at ¶ 41.

The Debtor filed its Objection to the MarkWest Claim on January 15, 2024.

## POSITIONS OF THE PARTIES AND ANALYSIS

The Debtor argues that the provisions of the Plan and Confirmation Order are clear that the resolution of the Colorado Litigation, now pending in the Appeals Court, will determine the amount, if any, of the MarkWest Claim. In support of its Objection, it cites the Confirmation Order and specifically the language of Paragraphs 12 and 41 quoted above.

MarkWest's response to the Objection is comprised of three parts. First, it argues that this Court has no jurisdiction to consider the Objection because such consideration is barred by the *Rooker-Feldman* doctrine. MarkWest correctly interprets that doctrine as prohibiting a federal court other than the Supreme Court from "exercis[ing] appellate jurisdiction over state-court judgments." *Hulsey v. Cisa*, 947 F.3d 246, 249 (4th Cir. 2020). In *Hulsey*, the Fourth Circuit stated that the doctrine applies to "cases brought by state-court losers complaining of injuries

6

caused by state-court judgment rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id*. at 250. In essence, the doctrine generally precludes a federal court from interfering with ongoing state-court litigation.

MarkWest continues its analysis by arguing that the *Rooker-Feldman* doctrine applies in bankruptcy cases as well as non-bankruptcy cases. However, given the provisions of the Plan and Confirmation Order, the Court finds it unnecessary to address that argument, as paragraphs 12 and 41 implicitly provide that the Colorado Litigation will determine the MarkWest Claim. The Debtor does not dispute that the Colorado Litigation will be dispositive of the MarkWest Claim. In fact, in the Objection, the Debtor states that the "Claim is subject to appeal pending in Colorado . . . and cross appeal . . ." and further states that the Plan and Confirmation Order "expressly preserve the Appeal and acknowledge that *ultimate adjudication of the Claim will be determined by the Appeal . . . .*" [ECF No. 402, emphasis added]. In addition, the Debtor specifically requests that "allowance of Claim Number 9-1 be determined by the Appeal." [*Id*.].

In its response to MarkWest's argument, the Debtor engages in a lengthy exploration of the effect of the *Rooker-Feldman* doctrine and the full faith and credit requirement of 28 U.S.C. 1738. The Court finds this enlightening but superfluous, as neither party seeks to invalidate the applicability of the final outcome of the Colorado Litigation. Considering the language of the Plan, the Confirmation Order, and the Objection, the Court finds that the *Rooker-Feldman* Doctrine is inapplicable

7

because neither party is currently seeking to interfere with or exercise appellate jurisdiction over the Colorado Litigation.

MarkWest's second argument is that the Objection is not ripe for adjudication because the Colorado Litigation is still ongoing. This is simply an acknowledgement that the MarkWest Claim has not been finally determined because the Colorado Litigation has not been concluded. It appears that all parties agree on this point, leaving it to the Court to determine how best to resolve the Objection at this stage of the bankruptcy case.

MarkWest's third argument is that the Debtor has failed to provide sufficient evidence to refute the *prima facie* validity of the Claim. This argument is inapposite in light of the Confirmation Order's provision that the Claim will be determined by the Colorado Litigation. Thus, a foray into whether the Debtor has satisfied the burden of establishing *prima facie* validity is not needed and, ironically, would likely implicate the *Rooker-Feldman* doctrine.

The Court views the Debtor's Objection to the MarkWest Claim as an effort to ensure that the amount contained therein does not become allowed as filed but remains subject to the outcome of the Colorado Litigation. The Debtor's reply to MarkWest's response to the Objection supports this view: "Had the Reorganized Debtor not objected to the MarkWest Claim by the deadline set for in the confirmed Plan, the MarkWest Claim would be deemed allowed under the confirmed Plan. Had the MarkWest Claim become allowed under the confirmed Plan, MarkWest

would likely have filed with the Colorado Court of Appeals a motion seeking to dismiss the Appeal as moot." [ECF 429 ¶ 25].[5]

As provided in the Confirmation Order, the Court must reserve the final determination of the appropriate amount of the Claim until the conclusion of the Colorado Litigation. Accordingly, it is

ORDERED that a ruling on the Objection is DEFERRED pending the final disposition of the Colorado Litigation, and it is further

ORDERED that on a quarterly basis, beginning one month from the date of entry of this Order and continuing until such time as a final order is entered resolving the Objection, the Debtor shall submit a report to this Court describing the status of the Colorado Litigation, including its anticipated date of final disposition, , and it is further

ORDERED that until further order of this Court, the Debtor shall maintain sufficient funds in reserve to pay MarkWest's pro rata share of any distribution to holders of allowed general unsecured claims required by Article IV(B) of the Plan.

---

[5] Under the Plan, "***Allowed***" means, with respect to any Claim or Interest, except as otherwise provided herein, such Claim or Interest (or any portion thereof) that is not Disallowed and (i) to which no objection to the allowance thereof or request for estimation has been Filed by the Claims Objection Deadline; (ii) has been expressly Allowed under the Plan, any stipulation approved by the Bankruptcy Court, or a Final Order of the Bankruptcy Court; (iii) is both not Disputed and either (a) evidenced by a Proof of Claim timely Filed by the Claims Bar Date (or for which Claim under the Plan, the Bankruptcy Code, or a Final Order of the Bankruptcy Court a Proof of Claim is not or shall not be required to be Filed) or (b) listed in the Schedules as not contingent, not unliquidated, and not disputed, and for which no Proof of Claim has been timely Filed; (iv) is allowed by a Final Order; or (v) is compromised, settled, or otherwise resolved by the Debtor and the Holder of such Claim or Interest; provided, that, except as otherwise expressly provided herein, the amount of any Allowed Claim or Allowed Interest shall be determined in accordance with any orders of the Bankruptcy Court (including the Final DIP Order) and the Bankruptcy Code, including sections 502(b), 503(b) and 506 of the Bankruptcy Code. 'Allow', 'Allowance,' and 'Allowing' shall have correlative meanings." [ECF No. 300, Art. I(A)].

Signed May 23, 2024

May 23, 2024

    /s/ Keith L. Phillips
United States Bankruptcy Judge

Copies to:

Brandy M. Rapp
WHITEFORD TAYLOR & PRESTON LLP
Two James Center
1021 E. Cary Street, Suite 1700
Richmond, VA 23219

Michael J. Roeschenthaler
WHITEFORD TAYLOR & PRESTON LLP
11 Stanwix Street
Suite 1400
Pittsburgh, PA 15222

James K. Donaldson, Esq.
Woods Rogers Vandeventer Black, PLC
Riverfront Plaza – West Tower
901 East Byrd Street, Suite 1600
Richmond, VA 23219

Steven D. Jerome, Esq.
Molly J. Kjartanson, Esq.
Snell & Wilmer, LLP
One East Washington Street, Suite 2700
Phoenix, AZ 8500

Kathryn R. Montgomery
Office of the United States Trustee
701 East Broad Street, Ste. 4303
Richmond, VA 23219